# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| NEAL A. NORLES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:21-cv-03248-RK |
| ) | Crim. No. 6:18-cr-03069-RK-4 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Movant Neal A. Norles is currently confined at USP McCreary in Pine Knot, Kentucky, serving a 360-month (30-year) term of imprisonment imposed by this Court on September 4, 2020. Now before the Court is Movant's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.) The motion is fully briefed. (Docs. 14, 19.) After careful consideration and for the reasons below, the motion is **DENIED**, a certificate of appealability is **DENIED**, and this case is **DISMISSED**.

## I. Background

On January 24, 2019, Movant was charged with one count of possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. (Crim. Doc. 1.)[1] At his initial appearance, United States Magistrate Judge David P. Rush appointed the Federal Public Defender to represent Movant. (Crim. Docs. 2, 3.) On January 28, 2019, Jeffrey Christian Sowash, with the Worsham Law Firm in Springfield, Missouri, filed an entry of appearance on behalf of Movant, and appointed counsel filed a motion to withdraw, which was granted. (Crim. Docs. 9-11.) The next day, William Worsham, also with the Worsham Law Firm, filed an entry of appearance on behalf of Movant. (Crim. Doc. 14.)

On February 19, 2019, Movant was charged by a second superseding indictment with two counts: conspiracy to distribute and possession with intent to distribute methamphetamine. (Crim. Doc. 64 at 2-4.)

---

[1] "Crim. Doc." refers to Movant's criminal case, No. 6:18-cr-03069-RK-4, and "Doc." refers to Movant's civil case, No. 6:21-cv-03248-RK.

On August 22, 2019, the Court entered a notice of hearing and set a change-of-plea hearing for September 5, 2019. (Crim. Doc. 100.) On September 5, 2019, Movant entered a guilty plea before Judge Rush to possession with intent to distribute methamphetamine. (*See* Crim. Docs. 107, 108.)[2] Movant entered this guilty plea pursuant to a written plea agreement. (Crim. Doc. 110.) At the change-of-plea hearing, Attorney Sowash appeared on behalf of Defendant who also appeared in person. (*See* Crim. Doc. 107.) On September 20, 2019, this Court accepted Movant's guilty plea pursuant to Judge Rush's Report and Recommendation. (Crim. Docs. 109, 117.) Accordingly, on February 6, 2020, the Court scheduled a sentencing hearing to take place on March 6, 2020. (Crim. Doc. 134.)

On February 28, 2020, Attorneys Branden Twibell and Scott Pierson entered their appearances on behalf of Movant. (Crim. Doc. 137.) On the same day, Attorney Twibell filed a motion to continue the sentencing hearing on behalf of Movant, stating "Counsel has voluntarily taken over representation of [Movant] from his past counsel as [Movant's] past counsel is moving his practice away from criminal defense." (Crim. Doc. 138 at ¶ 1.) Attorney Twibell represented in the motion that "[c]ounsel requires more time to receive and review discovery and the presentence investigation report in this case and review both with [Movant]," and that "[c]ounsel has spoken with [Movant] and he has no objection to this motion." (*Id.* at ¶¶ 4-5.) Four days later, on March 3, 2020, Attorneys Worsham and Sowash each filed a motion to withdraw as counsel for Movant. (Crim. Docs. 141, 142.) The motions to withdraw were both granted. (Crim. Docs. 145, 146.)

On September 4, 2020, the Court held a sentencing hearing. (*See* Crim. Doc. 168.) Movant appeared in person and with Attorney Twibell as his counsel. (*See id.*) At the sentencing hearing, the Court calculated an advisory guideline range of 292 to 365 months' imprisonment, based on a total offense level of 37 and a criminal history category of IV. (Sent. Tr. at 36.) Ultimately, the Court sentenced Movant to 360 months' imprisonment. (Crim. Docs. 168, 170.)

Movant filed the instant motion for post-conviction relief pursuant to 28 U.S.C. § 2255 on September 23, 2021. (Crim. Doc. 187; Doc. 1.[3])

Further facts are set forth as necessary.

---

[2] The Government later dismissed the other count against Movant in the second superseding indictment, conspiracy to distribute methamphetamine. (*See* Crim. Doc. 170.)

[3] On October 8, 2021, Movant filed an affidavit attesting to the facts and matters set forth in the § 2255 motion filed on his behalf by post-conviction counsel. (Doc. 7.)

2

## II. Standard of Review

Title 28 U.S.C. § 2255 provides that an individual in federal custody may file a motion to vacate, set aside, or correct his or her sentence when "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" A motion under this statute provides a statutory avenue through which to address constitutional or jurisdictional errors and errors of law that "constitute[ ] a fundamental defect which inherently results in a complete miscarriage of justice." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (citations omitted).

A claim of ineffective assistance of counsel may be sufficient to attack a sentence under section 2255; however, the "movant faces a heavy burden." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). In such cases, the Court must scrutinize the ineffective assistance of counsel claim under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* Under *Strickland*, a prevailing defendant must prove "both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988).

As to the "deficiency" prong, the defendant must show that counsel "failed to exercise the customary skills and diligence that a reasonably competent attorney would [have] exhibit[ed] under similar circumstances." *Id.* (quoting *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir. 1985)). Additionally, as to the "prejudice" prong, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 858 F.2d at 1336 (quoting *Strickland*, 466 U.S. at 694). In the context of an ineffective assistance claim within the context of a guilty plea, *Strickland*'s prejudice prong looks to "whether counsel's constitutionally ineffective performance affected the outcome of the plea process," that is, "that there is a reasonable probability that, but for counsel's errors, [movant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Under § 2255(b), a movant is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Accordingly, a hearing is not required "if either (1) the [movant]'s allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because

3

they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013) (citations and quotation marks omitted).

### III. Discussion

Movant raises four grounds for relief in his § 2255 motion to vacate, set aside, or correct his sentence. The Court addresses each in turn, below.

### A. Ground One: Sixth Amendment Counsel-of-Choice Claim

Movant argues he is entitled to post-conviction relief under § 2255 because Attorneys Worsham, Twibell, and Pierson violated his Sixth Amendment right to counsel of his choice.

On January 28, 2019, Movant's mother signed an agreement with Worsham Law Firm to represent Movant. (Doc. 1 at 10; *see* Docs. 1-1 at ¶¶ 3-4, 1-2.) The agreement provided for a flat fee of $12,000 to be paid in two installments due February 8, 2019, and March 15, 2019. (Docs. 1 at 11; 1-1 at ¶ 4; 1-2 at 10.) On January 29, 2019, Attorney Worsham appeared on behalf of Movant at his preliminary and detention hearing. (Crim. Doc. 12.) Attorney Sowash appeared on behalf of Movant at the February 28, 2019 initial appearance, arraignment and scheduling conferences (Crim. Doc. 69), as well as the September 5, 2019, change-of-plea hearing. (Crim. Doc. 107.) Further, on November 27, 2019, Attorney Sowash filed objections to the presentence investigation report and visited Movant in jail, where he told Movant that he was being deployed[4] and would not be able to represent Movant anymore. (Crim. Doc. 126; Doc. 1 at 14, 15.) Movant alleges after November 27, 2019, no attorney from the Worsham Law Firm ever contacted Movant or his family. (Doc. 1 at 14.)

Movant further alleges Attorneys Twibell and Pierson "had agreed to take over [Movant's] case as part of a business deal with [Attorney] Worsham." (*Id.* at 13.) Attorney Twibell visited Movant in jail on February 28, 2020, where he "informed [Movant] that he [Attorney Twibell] had taken over the Worsham Law Firm's practice, and . . . was now [Movant's] attorney," and that he "would represent [Movant] for the rest of the case." (*Id.* at 16.) Movant states Attorney Twibell also told him that "the money [Movant's] family had already paid would count, and they would not owe [Attorney Twibell] more." (*Id.*)

---

[4] Movant alleges Attorney Sowash was a member of the United States Armed Forces at that time. (Doc. 1 at 13.)

4

Movant alleges he was never informed that Attorneys Twibell and Pierson had agreed to take on his case "as part of a purchase of the Worsham Law Firm's business" and was never informed about the terms of that purchase agreement or his right to oppose Mr. Worsham's withdrawal or to seek other counsel. (*Id.* at 16.) As a result, Movant argues Attorneys Worsham, Twibell, and Pierson violated his constitutional right under the Sixth Amendment to counsel of his own choosing.

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." "[A]n element" of this right, the Supreme Court has explained, "is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)) (other citation omitted). In *Wheat*, the Supreme Court recognized, however, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159 (citations omitted).

Generally, "[a] defendant's right to counsel of choice is implicated when the Court interferes with the defendant's attempt to hire or fire a particular counsel." *United States v. Ngoc Nguyen*, No. 16-340 (MJD/BRT), 2021 WL 2228405, at *6 (D. Minn. June 2, 2021). Indeed, each case Movant cites concerns the violation of a defendant's Sixth Amendment right to choice of counsel only in the context of some action by *the court* that the defendant argued resulted in the violation of the right to choice of counsel under the Sixth Amendment. (Doc. 1 at 18-19.[5]) In other words, Movant cites to no case in his motion or reply that supports a Sixth Amendment claim seeking federal habeas relief based on a violation of a defendant's Sixth Amendment right to choice of counsel in the context of "an *outside-the-record* deprivation of counsel of choice" by the defendant's *own retained counsel*. (Doc. 8 at 34) (emphasis in original).

---

[5] *United States v. Gonzalez*, 548 U.S. 140 (2006) (district court denied counsel's motion for admission *pro hac vice*); *United States v. Mendoza-Salgado*, 964 F.2d 993 (10th Cir. 1992) (Sixth Amendment claim based on argument that the district court "forced [defendant] to trial represented by counsel whom he met only four days earlier, and whom he wanted to fire" where the district court refused to entertain a request for a continuance on the day of trial and refused to let defendant speak on his own behalf on the issue); *United States v. Lewis*, 759 F.2d 1316 (8th Cir. 1985) (including Sixth Amendment right-to-choice claim based on district court granting restraining order on defendant's assets); *United States v. Laura*, 607 F.2d 52 (3d Cir. 1979) (Sixth Amendment claim based, in its core, on district court's order dismissing defendant's counsel).

5

In his reply, at best, Movant points to two cases in support of his claim that retained counsel can violate a defendant's Sixth Amendment right to choice of counsel: *Hill v. Conway*, No. 9:04-CV-524 (FJS/RFT), 2008 WL 8095710 (N.D.N.Y. June 2, 2008)[6] and *People v. Betillo*, 297 N.Y.S.2d 444 (N.Y. Sup. Ct. 1967). The Court finds neither provide the necessary legal authority to support Movant's constitutional claim here, however.

In *Hill*, the district court denied a state prisoner's habeas petition brought in federal court pursuant to 28 U.S.C. § 2254. 2008 WL 8095710, at *1. In part, the state prisoner sought federal habeas relief arguing he "was denied his choice of counsel" under the Sixth Amendment where, he argued, the counsel who represented him at trial was not the attorney his father had retained to represent him (although the counsel who represented him was part of the same law firm the father had in fact retained). *Id.* at *14. The federal habeas court noted that state court initially denied relief reasoning that "although a criminal defendant has a right under the state and federal constitutions to counsel of his own choosing, Petitioner (1) never objected to [the attorney]'s representation, (2) did not move for a change in counsel after [the attorney] entered his appearance," and (3) the two lawyers at issue were members of the same firm. *Id.* In denying federal habeas relief, the federal court recognized the state court's denial of relief based on petitioner's acquiescence or failure to object to counsel's representation. *Id.* at *15.[7] More importantly, however, the *Hill* court recognized:

> Moreover, Petitioner's claim is not that the government or the trial court arbitrarily or erroneously prevented him from being represented by counsel of his choice. In fact, the record indicates exactly the opposite: that the state court protected Petitioner's right to counsel of choice [by allowing attorney to enter appearance based on his representation that petitioner wanted him to represent petitioner at trial]. . . . Instead, Petitioner's claim appears to be that **retained counsel** denied him his choice of counsel when he allegedly delegated his representation to [attorney]. "Thus, the truism that a defendant's choice of counsel should not be unnecessarily obstructed by the court is not implicated here."

---

[6] The United States Magistrate Judge's Report and Recommendation in *Hill*, as cited by Movant, was later adopted by the district court by No. 9:04-CV-524 (FJS/RFT), 2010 WL 3718871 (N.D.N.Y. Sept. 14, 2010).

[7] In support, the district court cited to *Ante Ljubas v. United States*, No. 86 Civ. 4410 (CBM), 1987 WL 19951 (S.D.N.Y. Nov. 10, 1987). *Ante Ljubas*, of course, predated *Wheat*, and in evaluating movant's claim under § 2255 that his retained attorney deprived him of his Sixth Amendment right to counsel-of-his-choice when another lawyer from the same firm appeared on movant's behalf, the *Ante Ljubas* court noted: "The Sixth Amendment only guarantees the accused the 'right . . . to have the assistance of counsel for his defence'; Its express language assuredly makes no reference to a right to 'counsel of one's choice,' and judicial interpretation of the Sixth Amendment has not embraced such a right." *Id.* at *2.

*Id.* at *16 (quoting *Ante Ljubas*, 1987 WL 19951, at *2) (other citations omitted) (emphasis in original).

Overlooking this portion of the *Hill* decision denying federal habeas relief, Movant points the Court instead to *Betillo*, a decision by a New York state trial court cited by the federal habeas court in *Hill* when later addressing the petitioner's argument he was denied his right to choice of counsel because the attorney hired by his father "was not authorized to delegate his representation . . . without Petitioner's consent." *Hill*, 2008 WL 8095710, at *16.

In *Betillo*, the state trial court granted an application to invalidate a sentence based on defendant's argument he had not retained the lawyer who represented him at sentencing. 279 N.Y.S.2d at 540. The state court ultimately held the defendant's constitutional rights were violated because "a retained attorney is not authorized to hire another attorney or to delegate his authority to another without the consent of his client," based on the right to counsel "of defendant's own choosing." *Id.* (citations omitted). Movant argues this case is unlike *Hill* but is like *Betillo*. Movant's reliance on *Betillo*, however, is misplaced if not for the simple reason that *Betillo* did not consider a defendant's right to counsel of choice under the federal constitution but rather *Betillo* concerned the defendant's rights under the New York State Constitution. *See id.* at 451 (citing *People v. Douglas*, 19 A.D.2d 455 (N.Y. App. Div. 1963); *People v. Hernandez*, 170 N.E.2d 673 (N.Y. 1960); *People v. Fitch*, 25 A.D.2d 783 (N.Y. App. Div. 1966)).[8] Moreover, the *Hill* court distinguished *Betillo*, though, since the record in *Hill* showed (1) petitioner consented to the attorney's representation, and (2) petitioner had hired the subject attorney when his father hired the attorney's law firm to represent petitioner. 2008 WL 8095710, at *16.

Movant cites no case – and the Court is not aware of any – that establishes as a matter of federal constitutional law a defendant's Sixth Amendment right to counsel of choice can be denied or deprived by retained counsel wholly outside-the-record without some accompanying action by the court. In sum, Movant does not assert a cognizable constitutional claim under the Sixth Amendment for violation of his right to counsel of choice where the actor alleged to violate

---

[8] Each of these three cases relied on by the state court in *Betillo* analyzing the defendant's constitutional right to counsel of his choice concerned only the New York State Constitution, not the federal constitution. *Douglas*, 19 A.D.2d at 457 (recognizing, "[u]nlike some States . . . there is firmly embedded in our Constitution (art. I, § 6) and decisional law the right of a defendant in a criminal case to defend in person or with counsel who may be . . . of his own choosing"); *Hernandez*, 170 N.E.2d at 670; *Fitch*, 25 A.D.2d at 783.

Movant's Sixth Amendment right to counsel of choice is his own retained counsel outside the context of a court proceeding or court involvement.

Ground One is denied.[9]

### B. Ground Two: Ineffective Assistance due to Conflict of Interest

Movant next argues Attorneys Worsham, Twibell, and Pierson were constitutionally ineffective due to the conflict of interest that arose concerning Movant's representation in his criminal matter and the underlying business arrangement between them.

As the Eighth Circuit has recognized, federal courts apply "several different standards" to Sixth Amendment ineffective-assistance-of-counsel claims based upon a conflict of interest. *Noe v. United States*, 601 F.3d 784, 789 (8th Cir. 2010). In *Cuyler v. Sullivan*, 446 U.S. 335 (1980), the Supreme Court held that when "a defendant . . . shows that a conflict of interest actually affected the adequacy of his representation, [he] need not demonstrate prejudice in order to obtain relief." *Id.* at 349 (citation omitted). As the Eighth Circuit has since recognized, however, the Supreme Court has not extended *Cuyler* beyond conflicts arising from counsel's joint representation at trial. *Covey v. United States*, 377 F.3d 903, 907 (8th Cir. 2004) (citing *Mickens v. Taylor*, 535 U.S. 162, 174-75 (2002)). At the same time, the Eighth Circuit recognized in *Covey* it is unsettled in this circuit whether *Cuyler* is limited to conflicts involving multiple or joint representation, although in *Covey* the court did not ultimately decide the issue since it found the ineffective assistance claim failed under either standard. *Id.* at 907-08; *see Noe*, 601 F.3d at 790 (not deciding whether *Cuyler* applies to other ethical conflicts of interest for the same reason); *Morelos v. United States*, 709 F.3d 1246, 1252 (8th Cir. 2013) (same).

Movant advocates solely for application of the *Cuyler* standard to his claim for ineffective assistance of counsel due to the conflict of interest asserted arising as a result of the business transaction between Attorneys Worsham, Twibell, and Pierson. Even assuming *Cuyler* provides the appropriate standard here, however, Movant's claim is without merit.[10]

---

[9] The Court is cognizant of the important matters of professional responsibility and ethics that underlie Movant's claims. Nonetheless, those issues have no independent bearing here and do not entitle Movant to habeas relief under § 2255 absent a cognizable constitutional violation under this claim for relief.

[10] In its opposition, the Government contends the *Strickland* standard rather than the *Cuyler* standard applies to this claim, but also that Movant's claim fails under whichever standard is applied. (Doc. 14 at 23.) In his reply, Movant does not address the issue of whether the *Strickland* or *Cuyler* standard applies to this habeas claim but rather asserts "*Strickland* prejudice only applies to the fourth ground concerning ordinary ineffective assistance of counsel, *not* to the second ground concerning a conflict of interest." (Doc. 19 at 23) (emphasis in original). As the Government's brief and a review of applicable

8

As stated above, to be entitled to relief under *Cuyler*, Movant must show "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 350. Used in this context, "actual conflict" encompasses "both the cause and effect elements of *Cuyler*," that is, as the Supreme Court has stated: "'[T]he [*Cuyler*] standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An actual conflict, for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.'" *Covey*, 377 F.3d at 908 n.3 (quoting *Mickens*, 535 U.S. at 172 n.5) (internal quotation marks omitted; brackets in original). To demonstrate such adverse effect, Movant must show the conflict "caus[ed] the attorney to choose to engage or not to engage in particular conduct," that is

> the defendant must identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.

*Noe*, 601 F.3d at 790 (citations and quotation marks omitted); *accord Morelos v. United States*, 709 F.3d 1246, 1252 (8th Cir. 2013). Stated differently, "[t]o demonstrate adverse effect, [the movant] must identify some actual and demonstrable adverse effect on the case, not merely an abstract or theoretical one." *Covey*, 377 F.3d at 908 (citation and quotation marks omitted).

For his part, Movant argues the conflict of interest adversely affected counsel's performance since Attorney Worsham "abandon[ed] [Movant] entirely," stopped communicating with Movant and his family, and "would have [otherwise] followed the legal requirements for terminating a representation." Similarly, Movant argues Attorneys Twibell and Pierson were "stuck representing [Movant]" and "would have engaged in all of Missouri's required disclosures" about the terms of their representation but for the conflict of interest. This repackaging of Movant's first ground for habeas relief does not satisfy *Cuyler*, however. *See Caban v. United States*, 281 F.3d 778, 786 (8th Cir. 2002) (finding no adverse effect of conflict of interest since the conflict of interest "made no difference to [counsel's] trial strategy or otherwise to the quality of his performance as [defendant]'s attorney").

---

caselaw reflects, however, whether *Strickland* or *Cuyler* applies to this claim appears to remain an unsettled question in the Eighth Circuit, if not in the Supreme Court. Nevertheless, even assuming *Cuyler* applies as Movant advocates – and indeed, that is the sole argument Movant presents in seeking federal habeas relief here – the Court finds Movant is not entitled to habeas relief for the reasons explained below.

Additionally, as explained in § II.D below, this claim would also fail under the *Strickland* framework as to Attorney Twibell's representation.

9

Considering Movant's claim that Attorney Worsham abandoned him and stopped communicating with him or his family, the Court notes Movant states in his motion November 27, 2019, was the last time he heard from or interacted with Worsham Law Firm when Attorney Sowash visited him in jail. By that time, however, the Court had already accepted Movant's guilty plea and Attorney Sowash had even filed the defense's objections to the presentence investigation report. Nothing occurred in Movant's case, or was scheduled to occur, thereafter until (1) February 6, 2020, when the Court scheduled Movant's sentencing hearing for March 6, 2020, and (2) when Attorneys Twibell and Pierson entered their appearance on Movant's behalf on February 28, 2020.

Movant also argues as a result of the conflict that Attorney Twibell "reviewed no discovery in the case" prior to Movant's sentencing hearing, which "deprived him of the ability to have a clear attack on [a key sentencing witness]'s credibility." (Doc. 1 at 40.) Movant asserts instead, the conflict caused Attorney Twibell to do "the bare minimum work." (*Id.*) Movant's assertion that Attorney Twibell did not review any discovery in the case is wholly unsubstantiated, is contrary to the record, and is contradicted within his own motion.

For instance, Movant acknowledges Attorney Twibell "stated he examined the discovery in advance of sentencing," but could not identify how he received that discovery, although it was not from Worsham Law Firm. (Doc. 1 at 28.) Movant surmises from the fact that Attorney Twibell has not produced to Movant's post-conviction counsel any file (electronic or otherwise) that includes this discovery, and because the e-mail record post-conviction counsel received from Attorney Twibell does not include any "e-mail from the Government's discovery coordinator giving Mr. Twibell access to the discovery," that Mr. Twibell reviewed no discovery. In addition, Movant argues there is no e-mail in the discovery provided to post-conviction counsel "requiring [Attorney Twibell] to sign a non-dissemination agreement, which the Government always does before an attorney can view discovery." Attorney Twibell, in fact, did sign a non-dissemination agreement, however. (Doc. 14-3.)[11]

---

[11] In his reply, Movant suggests the non-dissemination letter does not refute the allegations in the motion because it was "signed dated June 5, 2017, in representation for someone named James O. Mitchell." (Doc. 19 at 20.) While signed by Attorney Twibell on June 6, 2017, the letter, attached to the Government's response as Doc. 14-3, states: "Agreement for Non-Dissemination of Discovery for All Current and Future Cases," and that "Once the signed letter is returned, discovery materials will be produced in any current case and in future cases." (*Id.*) Moreover, the agreement above the signature line states: "I/We agree to the conditions of production stated above for all current and future cases in which I/We represent a defendant in a criminal prosecution in the Western District of Missouri." (*Id.*) Movant's suggestion that the non-dissemination agreement would not apply here in this case is not well taken.

Moreover, Attorney Twibell attests: "Discovery was received and reviewed and the facts of the case were discussed with Mr. Norles. I do not recall the specific reports I reviewed, but it would be very unusual for me not to have reviewed any discovery that was relevant to Mr. Norles' case." (Doc. 14-1.) Movant has provided "[n]o facts casting genuine doubt upon the veracity of [sentencing counsel]'s affidavit" and Movant's allegations Attorney Twibell reviewed no discovery is not properly supported here. *See Kingsberry v. United States*, 202 F.3d 1030, 1033 (8th Cir. 2000) (no evidentiary hearing required where veracity of counsel's affidavit was not challenged by any asserted fact and movant's own supporting affidavit asserted inconsistent facts) (citing *Holloway v. United States*, 960 F.2d 1348, 1358 (8th Cir. 1992) ("a single, self-serving, self-contradictory statement is insufficient to render the motion, files, and records of [the] case inconclusive")) (other citation omitted).

Movant provides no legal authority –and the Court is not aware of any – to support his claim that he is entitled to habeas relief because but for the conflict of interest Attorneys Worsham, Twibell, and Pierson would have kept him better informed about the circumstances surrounding Worsham Law Firm's termination of its representation of Movant and Attorneys Twibell and Pierson's subsequent representation of Movant, particularly where Movant does not identify how this conflict affected the quality of representation or trial strategy under the circumstances. In sum, Movant fails to show a conflict of interest adversely affected counsels' performance.

Ground Two is denied.

### C. Ground Three – Ineffective Assistance of Plea Counsel

Movant also asserts plea counsel, Attorney Sowash, was ineffective for (1) failing to advise Movant that the same sentencing structure would be applied under the plea agreement as if Movant proceeded to trial and was convicted, and (2) "fail[ing] to review the bulk of the Government's discovery before entering into plea negotiations and advising [Movant] on it." (Doc. 1 at 41.) Movant states in his motion notwithstanding plea counsel's deficient advice and performance, Movant "would not have accepted the plea offer, and instead would have taken his chances at trial."

Movant was charged by a second superseding indictment with two counts: conspiracy to distribute and possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846. (Crim. Doc. 64 at 1, 3.) Movant ultimately pleaded guilty to the latter count

11

– possession with intent to distribute. (*See* Crim. Docs. 110, 117.) At his sentencing hearing, the Government dismissed the conspiracy to distribute count. (*See* Crim. Doc. 170.)

Movant argues that had he proceeded to trial and been found guilty, the guideline sentencing range would have been the same as it was at sentencing upon pleading guilty. Paradoxically, Movant also acknowledges that by pleading guilty he was eligible for (and received) a three-level reduction for assumption of responsibility that would not otherwise apply had he proceeded to trial and thus rather than a guideline range of 360 months-life imprisonment, his guideline range at sentencing after pleading guilty was 295-365 months' imprisonment.

Even assuming that plea counsel was deficient as Movant alleges,[12] Movant fails to demonstrate *Strickland* prejudice here. When a movant's habeas action rests on ineffective assistance of plea counsel, the Supreme Court has recognized: "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" and instead, "Judges should . . . look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). In *Lee*, this "contemporaneous evidence" included (1) that the record showed "deportation [the issue for which counsel provided ineffective assistance] was the determinative issue in Lee's decision to accept the plea deal" where Lee "repeatedly [asked his counsel] whether there was any risk of deportation from the proceedings"; (2) in his plea colloquy when asked by the judge whether the risk of deportation should he be convicted affects his decision to plead guilty, Lee answered "Yes, your honor" and when asked for clarification, Lee turned to his attorney for advice; and (3) the consequences of proceeding to trial were not "markedly harsher than pleading [guilty]." *Id.* at 1968-69.

Here, the "contemporaneous evidence" to which Movant points consists only that (1) he faced essentially the same sentence should the case have proceeded to trial and he be found guilty, and (2) Worsham Law Firm had been paid a flat fee to represent him. (Doc. 1 at 53.) This is

---

[12] The Court notes, however, at the change-of-plea hearing, Movant testified he had had enough time to talk with plea counsel about his case and was satisfied with the advice that plea counsel had provided and, additionally, he understood and had discussed with his counsel the sentencing guidelines as they applied to the possession count to which he plead guilty. (Plea Tr. at 5, 8.) "While a guilty plea taken in open court is not invulnerable to collateral attack . . . the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)) (other citation omitted). It does not appear, either, Movant has met his burden of establishing deficient performance on the part of plea counsel.

12

simply not enough. Movant points to no actions he took or statements he made at any time during the underlying proceedings to demonstrate a reasonable probability he would not have pleaded guilty and would have gone to trial had plea counsel advised him that "he was facing essentially the same sentence if he went to trial and lost that he was by pleading guilty." Of course, as noted above, *ceteris paribus* had Movant proceeded to trial and was found guilty on even one of the two charges, his sentencing guideline range would have been much longer without the three-level assumption of responsibility that he received by pleading guilty. Additionally, that Movant retained private counsel by paying a flat fee to represent him does not provide such contemporaneous evidence, either. Accordingly, this claim must be denied. *See Thompson v. United States*, 872 F.3d 560, 567 (8th Cir. 2017) (affirming denial of § 2255 relief where movant's affidavit he would not have pleaded guilty and would have insisted on going to trial but for counsel's deficiencies provided nothing more than a *post hoc* assertion and lacked actions he took or statements he made before, during, or after sentencing to demonstrate a reasonable probability he would have done so but for counsel's alleged deficiencies).

Additionally, as best as the Court can discern, Movant argues plea counsel was also ineffective for failing to review relevant videos contained in discovery and thus deprived Movant "of the ability to make an *informed decision* about the Government's plea offer." (Doc. 1 at 52) (emphasis in original). This claim fails, however, for the same reason as above. Movant has not demonstrated the required showing of *Strickland* prejudice. For instance, Movant does not explain why or how the video of the traffic stop or "Informant's prevaricating statements"[13] to which he only generally refers would have swayed his decision to plead guilty or how it would have been exculpatory. Indeed, at the change-of-plea hearing, Movant acknowledged, under oath, he had "read . . . and gone over" the "Factual Basis for Guilty Plea" section of the plea agreement. (Plea Tr. at 7.) Movant acknowledged the statements contained therein were true. (*Id.*) Additionally, plea counsel acknowledged that he "had access to the Government's discovery file in this case" and that "based upon [counsel's] review of the discovery file . . . if put to proof . . . the United States could make a submissible case." (*Id.* at 8.) Movant does not explain or attempt to show with any particularity how the discovery that he acknowledges plea counsel *did* review in advising him to plead guilty "was woefully insufficient." This argument is without merit.

---

[13] As explained in § II.D below, the statements of the sentencing witness to which Movant refers were, at best, only mildly inconsistent if inconsistent at all.

Ground Three is denied.

**D.  Ground Four – Ineffective Assistance of Sentencing Counsel**

Finally, Movant asserts his sentencing counsel, Attorney Twibell, was ineffective for failing to review discovery in the case and, therefore, failed to sufficiently attack the credibility of the Government's sentencing witness, Stephan Samons, with prior inconsistent statements. Movant asserts Attorney Twibell "never reviewed any discovery in the case at all." This allegation is refuted by the record, however.

In a declaration attached to the Government's opposition, Attorney Twibell states: "Discovery was received and reviewed and the facts of the case were discussed with Mr. Norles. I do not recall the specific reports I reviewed, but it would be very unusual for me not to have reviewed any discovery that was relevant to Mr. Norles' case." (Doc. 14-1 at ¶ 3.) Moreover, as to the Government's sentencing witness, Attorney Twibell also states: "I do not recall the specific reports that I reviewed but do recall speaking with Mr. Norles about Mr. Samons' inconsistencies and not believing those inconsistencies would be damaging to Mr. Samons or beneficial to Mr. Norles." (*Id.* at ¶ 4.)

While questioning Mr. Samons at Movant's sentencing hearing, Attorney Twibell asked:

Q:  Okay. Where you using any drugs during this time period?

A:  Yes, sir.

Q:  What kind of drugs were you using?

A:  Methamphetamine, sir.

Q:  How much and how often?

A:  I was using every day. . .

Q:  Okay. And I thought I saw something in a report somewhere about – you talk a lot about your recollection is just not great because you were using. Does that sound accurate?

A:  That sounds accurate in some instances, yes.

(Sent. Tr. at 19-20.) Several reports, attached to Movant's motion containing discovery relevant to Mr. Samons' prior inconsistent statements, refer specifically to Mr. Samons' use of methamphetamine (Doc. 1-10 at 6, 7, 8) and one report specifically states: "SAMONS said he was using so much methamphetamine at the time it created issues in his memory of money amounts

and locations." (*Id.* at 9.) Movant's assertion that Attorney Twibell reviewed no discovery is plainly contradicted by the record.[14]

Additionally, Movant has not established *Strickland* prejudice. Movant argues had Attorney Twibell reviewed discovery, he would have uncovered prior inconsistent statements to impeach Mr. Samons' testimony. The alleged inconsistencies, if they are inconsistencies at all, are very slight. *See Johnson v. United States*, 278 F.3d 839, 843 (8th Cir. 2002) (movant cannot show prejudice for failure to adequately cross-examine a witness when the alleged inconsistencies were very slight).

Movant points several statements Mr. Samons told investigators in interviews that took place in June and November of 2018, as well as a January 2019 proffer.[15] A review of these reports with Mr. Samons' testimony at Movant's sentencing hearing reveals no such inconsistencies to entitle Movant to habeas relief, even assuming counsel's representation was constitutionally deficient.

In June of 2018, Mr. Samons told investigators he began selling methamphetamine in March of 2018. (Doc. 1-10 at 1.) After the person providing methamphetamine to Mr. Samons was arrested, Mr. Samons stated he began buying methamphetamine from "Neil," who had been the provider of methamphetamine to Mr. Samons' original source. (*Id.* at 2.) Mr. Samons stated he bought methamphetamine from "Neil" on five occasions – half a pound on three occasions and one pound on two occasions – and that the transactions occurred at Arrowhead Stadium or "Neil's" house. (*Id.*) Mr. Samons stated he paid $2,000 per pound and had seen "Neil" in possession with as much as 10 pounds. (*Id.*)[16]

Then in an interview on November 27, 2018, Mr. Samons told investigators that he would meet Movant in Long Beach, California, where he would pay Movant, and Movant would return later with the methamphetamine Mr. Samons had purchased. (*Id.* at 4.) Mr. Samons and Movant would return separately to Missouri. (*Id.*) Mr. Samons also stated in mid-November, Movant told

---

[14] Elsewhere in his motion, Movant argues "[Attorney] Twibell's cross-examination [of Mr. Samons] was short and based solely on the PSR itself." While the reports referenced above – that Movant asserts in his motion were in the Government's discovery – were mentioned in the PSR, the PSR itself does not appear to include Mr. Samson' personal drug use or his reported memory problems as a result of his drug use. (*See generally* Crim. Doc. 129.)

[15] Movant attached each report to his motion as an exhibit. (Doc. 1-10.)

[16] Movant appears to agree in his motion that "Neil" refers to Movant and does not suggest otherwise but instead includes this statement in his argument challenging sentencing counsel's cross-examination of Mr. Samons as ineffective assistance of counsel.

him "he distributed four pounds of methamphetamine to an unknown person in Joplin, Missouri," but Movant had not received payment for it. (*Id.*) Movant told Mr. Samons to "make a trip to California to purchase methamphetamine" and that at that time Movant "had no money and was trying to re-establish his methamphetamine distribution operation." (*Id.*) In that interview, Mr. Samons provided two phone numbers for Movant and stated that Movant "primarily used Snapchat to discuss transactions . . . but was starting to speak on the phones by voice and text more often." (*Id.* at 5.)

Finally, in a proffer in January of 2019, Mr. Samons stated in March of 2018 he reconnected with a prison-acquaintance, Robert McDaniel, from whom Mr. Samons agreed to purchase methamphetamine. (*Id.* at 7.) Shortly after this purchase and while he was still distributing it, Mr. Samons stated he purchased a second pound from Mr. McDaniel for $5,000. (*Id.*) A few days after, Mr. Samons stated he met with Mr. McDaniel again to purchase another pound of methamphetamine, but that Mr. McDaniel did not have it. (*Id.* at 8.) Mr. Samons stated at the end of March of 2018, Mr. McDaniel contacted him that he had the methamphetamine to sell Mr. Samons. (*Id.*) Mr. Samons purchased five pounds of methamphetamine for an additional $12,000. (*Id.*)

In late April or early May of 2018, Mr. Samons traveled to Las Vegas, Nevada, with $30,000 to purchase methamphetamine from Mr. McDaniel, but lost $10,000 gambling. (*Id.*) Mr. Samons traveled to Los Angeles, California, to meet Mr. McDaniel and gave him $20,000, although he did not receive any methamphetamine. (*Id.*) Later in May of 2018, Mr. Samons stated in the proffer, he was contacted by Mr. McDaniel and Movant in Kansas City, Missouri, who gave Mr. Samons six pounds of methamphetamine for the $20,000 he had given Mr. McDaniel earlier. (*Id.*) In late May of 2018, Mr. Samons stated he gave Mr. McDaniel $30,600 for the purchase of ten pounds of methamphetamine. (*Id.* at 9.) Mr. Samons met with Mr. McDaniel and Movant at the end of May in Kansas City to collect the methamphetamine he was owed, but Mr. McDaniel and Movant left. (*Id.*) Later that day, Mr. Samons received a phone call from Movant telling him that Mr. McDaniel had been arrested. (*Id.*) A few days later, Movant "front[ed]" Mr. Samons one pound of methamphetamine, which he accepted. (*Id.*) Mr. Samons later sold a portion of that methamphetamine in exchange for money and three guns, which he traded with Movant for one pound of methamphetamine. (*Id.*)

Mr. Samons' testimony at Movant's sentencing hearing included the following:

- When he began selling methamphetamine in March of 2018, Mr. McDaniel was his supplier. (Sent. Tr. at 9.) Mr. Samons initially purchased one pound of methamphetamine from McDaniel for $5,000. (*Id.* at 10.)
- At the end of March, Mr. McDaniel contacted Mr. Samons to see if he wanted to purchase more methamphetamine and Mr. Samons then purchased four pounds of methamphetamine from Mr. McDaniel (*Id.* at 10-11.)
- Mr. Samons testified Mr. McDaniel was purchasing his methamphetamine from Movant, whom he was later introduced to as "the supplier and the man with the connection in California." (*Id.* at 11.)
- Mr. Samons then testified in "late April or early May" he met Mr. McDaniel and Movant in California to purchase six pounds of methamphetamine. (*Id.* at 11-12.)
- He then testified in May of 2018, he saw Mr. McDaniel in Kansas City, where he attempted to purchase ten pounds of methamphetamine for $30,000, but was unable to complete the purchase because Mr. McDaniel was arrested. (*Id.* at 12-13.)
- Mr. Samons testified he did not get methamphetamine for the $30,000 he had given from either Mr. McDaniel of Movant, but later that day he was contacted by Movant who "fronted" him one pound of methamphetamine because Mr. Samons did not have any money then. (*Id.* at 13-14.)
- Mr. Samons testified he sold a portion of that methamphetamine in exchange for money and several guns and went to Movant's house to exchange the guns and cash to Movant for the methamphetamine he had been "fronted." (*Id.* at 15-16.)
- Mr. Samons testified he saw approximately ten pounds of methamphetamine in Movant's residence. (*Id.* at 16.)

On cross-examination, Mr. Samons testified he went to California to purchase six pounds of methamphetamine but did not obtain any drugs at that time. (*Id.* at 20.) Attorney Twibell also inquired of Mr. Samons:

> Q: You mentioned that 6 pounds – I'm going to talk about the 6 pound incident. You say you went to California and met with Mr. Norles and Mr. McDaniel; is that right?
>
> A: Yes, sir.
>
> Q: But they didn't provide you with any drugs at that time?
>
> A: No sir. Not on that day.

17

> Q: You said on direct just now you received those 6 pounds from Mr. Norles?
>
> A: Yes, sir.

(*Id.* at 20.) When questioned by the Court, Mr. Samons clarified in May of 2018 the purchase of ten pounds of methamphetamine was not completed, although he had already paid for it. (*Id.* at 21-22.) Mr. Samons testified Movant contacted him by Facebook after the other individual's arrest. (*Id.* at 22.)

Movant's assertion that Mr. Samons' "story changed wildly over time, and considerably differed from what Mr. Samons stated at the sentencing hearing" is simply not borne out in the record.[17] Thus, even if Attorney Twibell's representation of Movant was constitutionally deficient – which Movant has not established here – Movant has failed to demonstrate *Strickland* prejudice and is otherwise not entitled to federal habeas relief on this claim.

Ground Four is denied.

### IV. Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to Movant. A certificate of appealability may be issued "only if [Movant] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because Movant has made no such showing, the Court declines to issue a certificate of appealability.

### V. Conclusion

Accordingly, after careful consideration and for the reasons explained above, because the motion, files, and record conclusively show Movant is not entitled to relief, it is **ORDERED** that (1) Movant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED**; (2) a certificate of appealability is **DENIED**; and (3) this case is **DISMISSED**.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: April 1, 2022

---

[17] For instance, Movant characterizes the November 2018 interview as Mr. Samons "chang[ing] his story and t[elling] officers that instead of in Kansas City, he purchased methamphetamine from Mr. Norles in Long Beach, California." (Doc. 1 at 32.) Rather than involving a single transaction of methamphetamine, however, Mr. Samons' statements and testimony indicate an on-going relationship and multiple drug transactions with Movant and others. Movant's argument is without merit.